UNITED STATES DISTRICT COURT

NEW JERSEY DISTRICT COURT

| | |
|---|---|
| RYAN RUSSELL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br>v.<br><br>ADVANCE AUTO PARTS, INC.,<br><br>Defendant. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff RYAN RUSSELL ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on his personal knowledge of his own acts and, otherwise, upon information and belief including based on investigation of counsel.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, by and through undersigned counsel, brings this action both on his own behalf and on behalf of the class defined below, comprised of all individuals similarly situated within the State of New Jersey, to redress the unlawful commercial practices employed by Defendant ADVANCE AUTO PARTS, INC. (hereinafter "Defendant") regarding unlawful terms and conditions that purport to govern products purchased from Defendant's website, shop.advanceautoparts.com. Specifically, and as detailed more fully below, at the time Plaintiff and Class Members purchased items from Defendant, Defendant's website contained a consumer contract entitled "Terms and Conditions" that purported to impose illegal exculpatory and other such provisions upon all users of its website, and purported to nullify certain legal duties and responsibilities Defendant owes to its consumers and prospective consumers.

2.     Defendant has imposed the unfair, one-sided provisions in its Terms and Conditions in violation of certain statutory and common law standards and New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 *et seq.*

## PARTIES

3.     Plaintiff Ryan Russell is an individual adult resident and citizen of Ocean County, New Jersey, and is a member of the Class alleged herein.

4.     Plaintiff purchased a tanner select chamois through Defendant's website, shop.advanceautoparts.com, on or about January 16, 2016.  Plaintiff and Class Members are "consumers" and/or "prospective consumers" as defined by N.J.S.A. 56:12-15.

5.     Defendant Advance Auto Parts, Inc. is incorporated under the laws of the State of Delaware, with its headquarters located at 5008 Airport Road, Roanoke, Virginia 24012. Defendant is a "seller" as described in N.J.S.A. 56:12-15.  As such, Defendant is a citizen of Delaware and Virginia.

6.     At all relevant times, Defendant sold products by means of its website, shop.advanceautoparts.com, in the State of New Jersey, utilizing unfair, one-sided provisions contained in its "Terms and Conditions" consumer contract which violate New Jersey law.

7.     Defendant markets its goods and services throughout the State of New Jersey by means of its website.  As such, New Jersey courts maintain a significant interest in regulating Defendant's conduct which emanates from New Jersey.

## JURISDICTION AND VENUE

8.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because members of the proposed Class are citizens of states different from

Defendant's home state, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

9.      This Court has jurisdiction over the Defendant named herein because Defendant has sufficient minimum contacts with New Jersey and/or otherwise intentionally avails itself of the laws and markets of New Jersey, through the promotion, sale, marketing and distribution of its goods and services in New Jersey, to render the exercise of jurisdiction by the New Jersey courts permissible.

10.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

11.      Defendant markets automotive products and accessories throughout the State of New Jersey via its website, shop.advanceautoparts.com.

12.     Plaintiff and Class Members were users of Defendant's website and/or purchased products through Defendant's website and/or were prospective consumers otherwise displayed and/or offered the "Terms and Conditions" on Defendant's website.  Consumers and prospective consumer's rights with respect to products purchased through Defendant's website were purportedly governed by a website document entitled "Terms and Conditions".

13.     The "Terms and Conditions" purport to be a binding agreement between Defendant and all parties who use the website and/or purchase any of the products available on Defendant's website, as shown below.

> Except as otherwise set forth herein or agreed to between you and AdvanceAutoParts.com, these terms and conditions ("Terms and Conditions")

> govern your use of the AdvanceAutoParts.com website, (the "Site") and any products purchased from AdvanceAutoParts.com using the Site (the "Products"). By accessing and using the Site, you acknowledge that you have read and unconditionally agree to follow and be bound by these Terms and Conditions. If you do not agree to be bound by these Terms and Conditions, then you are requested to immediately exit the Site.

14. At all relevant times, the representatively binding provisions in the "Terms and Conditions" imposed illegal conditions upon the customers who purchased products from Defendant's website. Despite clear law to the contrary, Plaintiff and Class Members, upon purchase of goods and/or services from Defendant's website, were purportedly forced to forego virtually any claim under tort or negligence arising from their use of the website and from their purchase of goods or services from the website.

15. At all relevant times, the "Terms and Conditions" also included a provision that requires Plaintiff and Class Members to indemnify Defendant and its personnel regarding any activity from the internet accounts of Plaintiff and Class Members.

16. All of these provisions violate the TCCWNA.

A. Terms and Conditions Which Purport to Exculpate Defendant From Liability for Any and All Tortious Actions and Purport to Deny Plaintiff's Grounds for Redress Violate the TCCWNA.

17. New Jersey law specifically prohibits the type of exculpatory clause contained in Defendant's "Terms and Conditions". Exculpatory provisions are disfavored by New Jersey law because "they undermine one purpose of tort law, which is to deter careless behavior by a party in the best position to prevent injuries in the first place." *See Martinez-Santiago v. Public Storage*, 38 F.Supp.3d 500, 512-513 (D.N.J. 2014) ("[h]ere, the exculpatory provision purports to hold [defendant] harmless for most losses incurred by consumers, except those that are the direct result of [defendant's] fraud or willful conduct. Although Plaintiff plausibly pleads that such a broad exculpatory provision is not permitted under New Jersey law, the provision

purports to be enforceable in the lease agreement. Plaintiff states a valid claim that this is the kind of provision that TCCWNA was designed to address."); *see also Marcinczyk v. State of N.J. Police Training Comm'n*, 203 N.J. 586, 593 (2010).

18.     Defendant purports to disclaim liability, among other things, for "**ANY DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, CONSEQUENTIAL, OR ANY OTHER DAMAGES WHATSOEVER THAT RESULT FROM THE USE OR PERFORMANCE OF, OR THE INABILITY TO USE, THE SITE, THE PRODUCTS, OR INFORMATION, OR FUNCTIONS ON SUCH SITE, EVEN IF ADVANCEAUTOPARTS.COM HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES**." This provision purports to bar Plaintiffs from asserting any cause of action against Defendant for its negligence or failure to exercise a basic standard of care in their dealings with consumers and prospective consumers. Likewise, the provision attempts to absolve Defendant of its legal responsibility to exercise reasonable care and avoid creating an unreasonable risk of harm to consumers and prospective consumers.

19.     Under well-established New Jersey law, Defendant owes a duty of care to Plaintiff to avoid creating an unreasonable risk of harm.  Plaintiffs harmed by Defendant's unreasonable conduct are entitled to collect damages.  This provision purports to remove Defendant's responsibility to act reasonably and purports to bar Plaintiff from redress for a breach of Defendant's standard of care.  This provision is contrary to New Jersey law. *See, e.g. Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 448 (1993).

20.     As such, the exculpatory clause violates the TCCWNA.

B.  Terms and Conditions Which Purport to Deny Rights, Responsibilities and Remedies Under the New Jersey Products Liability Act ("NJPLA") Violate the TCCWNA.

21.     Additionally, at all relevant times the above-referenced provisions purported to absolve Defendant of its responsibility to manufacture and sell safe products.  The provision further purported to bar Plaintiffs from exercising their legal right to seek redress under the NJPLA. *See, N.J.S.A.* 2A:58C-1, *et al.*

22.     Namely, among other things, Defendant stated under its "**LIMITATION OF LIABILITY**" provision that:

> **ADVANCEAUTOPARTS.COM AND ITS AFFILIATES WILL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, CONSEQUENTIAL, OR ANY OTHER DAMAGES WHATSOEVER THAT RESULT FROM THE USE OR PERFORMANCE OF, OR THE INABILITY TO USE, THE SITE, THE PRODUCTS, OR INFORMATION, OR FUNCTIONS ON SUCH SITE, EVEN IF ADVANCEAUTOPARTS.COM HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL ADVANCEAUTOPARTS.COM AND ITS AFFILIATES' TOTAL LIABILITY TO YOU FOR ALL DAMAGES, LOSSES, AND CAUSES OF ACTION, WHETHER ARISING OUT OF CONTRACT, TORT, OR OTHERWISE, EXCEED THE AMOUNT PAID BY YOU, IF ANY, FOR ACCESSING THE SITE OR PURCHASING THE PRODUCTS.**

23.     These provisions purport to deprive customers of their rights and remedies under the NJPLA and purport to absolve Defendant of its duty to manufacture and distribute a reasonably safe product free from defects.

24.     The New Jersey Products Liability Act was passed based on Legislative findings "that there is an *urgent need* for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products, including certain principles under which liability is imposed and the standards and procedures for the award of punitive damages." *N.J.S.A.* 2A:58C-1 (emphasis added).

25.     Under the Act, "[a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: (a.)

deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or (b.) failed to contain adequate warnings or instructions, or (c.) was designed in a defective manner." *N.J.S.A.* 2A:58C-2.

26.     Plaintiffs who prevail under the NJPLA are entitled to recover any and all damages resulting from their injury, including punitive damages if properly demonstrated. *See e.g. N.J. Civ. Jury Charge* 1.12(O); *Fischer v. Johns-Manville Corp.*, 103 *N.J.* 643, 670-71 (1986) ("punitive damages are available in . . . strict products liability actions when a manufacturer is (1) aware of or culpably indifferent to an unnecessary risk of injury, and (2) refuses to take steps to reduce that danger to an acceptable level. This standard can be met by a showing of 'a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences.'") (internal citations omitted).

27.     Given the clear danger of unsafe products as recognized by the New Jersey Legislature, to purport to deny consumers a cause of action for harm arising from a potentially unsafe product is contrary to established New Jersey law.  Additionally, there will be a chilling effect if consumers are led to believe such exculpatory provisions are enforceable.  Defendants will be able to purport to contract away their statutorily fixed obligation to refrain from producing dangerous products.  Likewise, Plaintiffs would mistakenly believe they are barred from seeking relief for serious injury arising from defective products.  This would result in a reduction in costs for unscrupulous manufacturers and sellers while companies creating safe products would be burdened with a higher cost of doing business.  The ultimate effect would be a proliferation of unsafe products and injured consumers believing they have no grounds for redress.  Clearly, this was not the Legislature's intent when the NJPLA was enacted.

28.    It *was*, however, the Legislature's intent in drafting the TCCWNA to prevent against this type of harm.  A provision that purports to absolve Defendant of liability resulting from its dangerous products is unlawful.  Plaintiffs have a legal right under the NJPLA to bring suit against manufacturers and sellers of dangerous products.  Likewise, Defendant has a statutorily imposed duty to refrain from introducing dangerous products into the marketplace and is liable for same.

29.    Defendant has a clear responsibility under the NJPLA to manufacture and sell safe products.  The "Terms and Conditions" purport to remove that legal responsibility and absolve Defendant from responsibility for resulting injury to consumers.

30.    These "Terms and Conditions" therefore violate the TCCWNA.

C.  Terms and Conditions Which Purport to Deny Rights, Responsibilities and Remedies Under the New Jersey Punitive Damages Act ("NJPDA") Violate the TCCWNA.

31.    Additionally, Defendant purports to deprive Plaintiffs of their remedies under the NJPDA. *N.J.S.A.* 2A:15-5.9 *et seq.*

32.    As set forth above, Defendant represents that persons using their website are barred from seeking redress against Defendant "FOR **ANY DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, CONSEQUENTIAL, OR ANY OTHER DAMAGES WHATSOEVER**" for harm caused by its products or services.

33.    Moreover, Defendant purports that they are not liable for the harm to Plaintiffs "**EVEN IF ADVANCEAUTOPARTS.COM HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES**[.]"

34.    This language purports to take away a clearly established right under the NJPDA to pursue punitive damages against defendants who with actual malice or wanton and willful disregard cause harm to foreseeable plaintiffs. *N.J.S.A.* 2A:15-5.12.

35.     Plaintiffs' right to pursue punitive damages against defendants who are recklessly indifferent to the consequences of harm to others is dually well recognized by New Jersey common law. *See, e.g. Smith v. Whitaker*, 160 N.J. 221, 241 (1999); *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 49 (1984); *see also Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997) (noting that to justify punitive damages award defendant's conduct must be reckless); *DiGiovanni v. Pessel*, 55 N.J. 188, 190 (1970) (noting punitive damages may be justified by defendant's "conscious and deliberate disregard of the interests of others")(*quoting* William Prosser, *Handbook on the Law of Torts § 2* (2d ed. 1955)).

36.     A provision that purports to bar Plaintiffs from exercising their rights under the NJPDA is therefore unlawful.  Likewise, such a provision is shocking to the conscience in that it purports to absolve Defendant of its duty to refrain from willfully and/or recklessly creating an unreasonable risk of harm to others.   Indeed, under Defendant's Terms of Use, Defendant purports not to be liable for any punitive damages "**EVEN IF ADVANCEAUTOPARTS.COM HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES**[.]"

37.     This provision purports to insulate Defendant even if an accusation of punitive damages is specifically pled in a complaint as required by *N.J.S.A.* 2A:15-5.11 and Defendant is expressly made aware its conduct is malicious or willfully and/or wantonly reckless.

38.     Such a provision is unlawful under the NJPDA in that it purports to deny to Plaintiffs their legal rights under the Act.   Additionally the provision purports to absolve Defendant of any accountability in the form of punitive damages even if expressly made aware that its conduct is expressly malicious or wantonly and/or willfully reckless.

39.     This provision thereby violates the TCCWNA.

D.  Terms and Conditions Which Purport to Deny Rights, Responsibilities and Remedies Under the Uniform Commercial Code ("U.C.C.") Violate the TCCWNA

40.     Defendant purports to bar Plaintiffs from asserting any action "**ARISING OUT OF CONTRACT, TORT, OR OTHERWISE**" for damages arising from the use of Defendant's products and services.

41.     This provision purports to deny Plaintiffs their rights and remedies under the U.C.C. to recover damages for economic harm and/or harm to property.

42.     The NJ U.C.C. provides "a comprehensive system for determining the rights and duties of buyers and sellers with respect to contracts for the sale of goods[.]" *Corestar Int'l Pte. Ltd. v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 116 (D.N.J. 2007); *N.J.S.A.* 12A:1-101, *et seq.*

43.     Buyers who purchase commercial goods from merchants have a litany of remedies under the N.J. U.C.C. when a seller breaches his or her duty.  These remedies include damages for economic and property damage. *N.J.S.A.* 12A:2-701, *et seq*; *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 581-82 (1985) ("the U.C.C. 'is generally regarded as the *exclusive source* for ascertaining when a seller is subject to liability for damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself.'") (quoting W. Prosser & W. Page Keeton, *Handbook of the Law of Torts* § 97 at 680 (5th ed. 1984)).

44.     Defendant purports to strip Plaintiffs of their legal rights under the U.C.C. to seek damages for a breach of contract claim against Defendant.  Additionally, this provision purports to absolve Defendant of its responsibility to refrain from breaching contract agreements and/or causing property and/or economic harm to Plaintiffs under the U.C.C.

45.     This clause is thereby unlawful and violates the TCCWNA.

E.   Terms and Conditions Which Purport to Require Plaintiff and Class Members to Indemnify Defendant and its Personnel Violate the TCCWNA.

46.     Under New Jersey law, it is "clearly established that 'a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms.'"   *Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500, 516 (D.N.J. 2014) (quoting *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986)); *Castro v. Sovran Self Storage, Inc.*, 2015 WL 4380775, at *9-*10 (D.N.J. July 16, 2015) (citing *Martinez-Santiago*).

47.     At all relevant times, Defendant's "Terms and Conditions" required Plaintiff and Class Members to "defend, indemnify, and hold harmless Defendant and its affiliates from and against any and all claims, damages, costs, and expenses, including without limitation, attorneys' fees, arising from or related to your use of the Site or the Products."  This language purports to go much further than the provision in *Ramos*, and plainly violates the TCCWNA.

F.   Terms and Conditions Which Purport to Remove Defendant's Responsibility for Certain Acts of Third Parties and Purport to Bar Plaintiff's Grounds for Redress Violate the TCCWNA.

48.     The "Terms and Conditions" violate New Jersey law in that they purport to absolve Defendant of its duty to protect customers against harm arising from third-party acts. *See, e.g. Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 284 (1982) (upholding duty imposed on business owner to protect against third-party criminal acts since, "the business invitor is in the best position to provide either warnings or adequate protection for its patrons…[and] the public interest lies in providing a reasonably safe place for a patron to shop[.]'"); *Trentacost v. Brussel*, 82 *N.J.* 214, 231 (1980) (landlord owes duty to tenant to provide reasonable security measures protecting against criminal acts of third-parties).

49.     Defendants have a clear duty under the common law to provide a safe environment for their customers to shop. *See, Butler*, 89 *N.J.* at 284.  The fact that Defendant

sells its products online should not absolve it of its well-defined duty to protect customers from the criminal acts of third-parties. Indeed, in today's modern-society, the internet has become the shopping mall and third-party computer hackers the pickpockets.[1]

50.     The Federal Trade Commission ("FTC") and Federal Communications Commission ("FCC") have promulgated standards for businesses to safeguard against the disclosure of sensitive consumer information to third-party criminal hackers. According to the FTC, "it is almost impossible to be in business and not collect or hold personally identifying information — names and addresses, Social Security numbers, credit card numbers, or other account numbers — about your customers, employees, business partners, students, or patients. If this information falls into the wrong hands, it could put these individuals at risk for identity theft."[2] Accordingly, the FTC instructs business owners to take safeguards to prevent against the disclosure of customer information to criminal third-parties and to follow state and federal notification requirements if and/when a breach occurs. *Id.*

51.     Likewise, the FCC, in connection with the Department of Homeland Security, the National Cyber Security Alliance and The Chamber of Commerce promulgates a set of standards for business owners to follow to protect consumer information from third-party criminal hackers. Namely, according to the FCC, businesses are under an obligation "to do more to protect against growing cyber threats."[3]  How a business "handle[s] and protect[s] . . . data is central to the

---

[1] Practical Law, *Date Protection in [the] United States: Overview*, http://us.practicallaw.com/6-502-0467#a762707 ("The proliferation of security breaches in recent years has led to an expansion of . . . privacy laws, regulations and guidelines which is becoming one of the fastest growing areas of legal regulation.").

[2] Federal Trade Commission, *Information Compromise and the Risk of Identity Theft: Guidance for Your Business* (2004), https://www.ftc.gov/tips-advice/business-center/guidance/information-compromise-risk-identity-theft-guidance-your.

[3] Federal Communications Commission, *Cyber Security Planning Guide*, https://transition.fcc.gov/cyber/cyberplanner.pdf.

security of [the] business and the privacy expectations of customers, employees and partners." *Id.* at PDS-1. Under the FCC's guidelines "[a]ll companies should develop and maintain clear and robust policies for safeguarding critical business data and sensitive information[.]" *Id.* at PDMI-1.

52.     Indeed, the FCC explicitly acknowledges, "[p]rivacy is important for your business and your customers. Continued trust in your business practices, products and secure handling of your clients' unique information impacts your profitability. Your privacy policy is a pledge to your customers that you will use and protect their information in ways that they expect and that adhere to your legal obligations . . . [c]ustomers . . . expect you to make their privacy a priority . . . you will be held accountable for what you claim and offer in your policy." *Id.* at PDS-2. Indeed, emerging technology offers "cyber criminals many new ways to victim your business, scam your customers and hurt your reputation." *Id.* at SF-1. As such, business owners are directed to implement various action items including training plans for employees, protections against online fraud, protections against malware and fake antivirus offers and other malicious software. *Id.* at SF-1 to SF-3.

53.     In no uncertain terms, the FCC warns business owners of the consequences of failing to take proper security measures to protect against third-party criminal acts:

> Website security is more important than ever. Web servers, which host the data and other content available to your customers on the Internet, are often the most targeted and attacked components of a company's network. Cyber criminals are constantly looking for improperly secured websites to attack, while many customers say website security is a top consideration when they choose to shop online. As a result, it is essential to secure servers and the network infrastructure that supports them. The consequences of a security breach are great: loss of revenues, damage to credibility, *legal liability* and loss of customer trust.

*Id.* at WS-1. Additionally, the FCC endorses the use of Operational Security measures to identify critical protected information, analyze threats to and vulnerability of that information

and countermeasures available to mitigate those threats. *Id.* at OS-1. Explicitly, the FCC relays that if a business "accepts payments by credit or debit card[s], it is important to have security steps in place to ensure . . . customer information is safe." *Id.* at PC-1.

54.     With these standards in mind, the United States District Court for the District of New Jersey recently upheld a claim against business owners who failed "to implement reasonable and appropriate security measures" protecting their online clients' information from data breaches effectuated by third-party hackers. *F.T.C. v. Wyndham Worldwide Corp.,* 10 *F.Supp.3d* 602, 608-09 (D.N.J. 2014) (denying defendant online hotel company's motion to dismiss and agreeing with the FTC that online companies' substandard online security measures were cause in fact of plaintiffs' injuries – despite intervening acts of third-party hackers).

55.     Additionally, the New Jersey Legislature has devoted an entire statutory regime towards regulating online businesses safeguarding of customers' personal information from third-party criminal hackers. *See N.J.S.A.* 56:8-161, *et seq.* Failure to comply with the statutory mandates and take proper safeguards to notify and protect against the dissemination of customers' personal information – even if disclosed as the result of third-party criminal acts – is a tortious offense and actionable under the New Jersey Consumer Fraud Act. *N.J.S.A.* 56:8-3; 56:8-3.1.

56.     Despite the controlling statutes, common law and FTC and FCC guidelines, Defendant purports to absolve itself of the responsibility to take reasonable measures and statutorily fixed measures to protect consumers from third-party criminal hackers.

57.     At all relevant times, Defendant purported in its "Terms and Conditions" that it is not liable for "**ANY DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, CONSEQUENTIAL, OR ANY OTHER DAMAGES WHATSOEVER THAT RESULT**

**FROM THE USE OR PERFORMANCE OF, OR THE INABILITY TO USE, THE SITE, THE PRODUCTS, OR INFORMATION, OR FUNCTIONS ON SUCH SITE, EVEN IF ADVANCEAUTOPARTS.COM HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**"

58.     The Legislature, Courts and Regulatory Agencies have identified steps Defendant is required to take to protect consumers from harms perpetuated by third-party criminals.  The above language purports to absolve Defendant of these aforementioned responsibilities. Likewise, the provision purports to bar Plaintiffs from seeking redress under the common law or *N.J.S.A.* 56:8-161, *et al.* for Defendant's failure to protect against third-party criminal acts.

59.     Defendant has a duty to take reasonable steps to prevent harm to consumers and prospective consumers arising from third-party criminal acts.  Plaintiffs have a means of redress for Defendant's failure to take steps to protect against harms perpetuated by third-party criminals.  This clause purports to take away these rights and responsibilities and thus violates the TCCWNA.

G.  Defendant's "Terms and Conditions" Violate the TCCWNA

60.     New Jersey consumer protection laws, including the TCCWNA, are designed to protect consumers from the type of unconscionable and illegal provisions contained in Defendant's "Terms and Conditions" as set forth above.

61.     Defendant's imposition upon consumers of the above-described provisions in its "Terms and Conditions" violates certain common law standards and statutory provisions, including, but not limited to the New Jersey Product Liability Law, and thus violates TCCWNA, most particularly N.J.S.A. 56:12-15.

62.    Plaintiff therefore brings the statutory claim alleged herein to halt Defendant's continued use of the illegal language in its "**LIMITATION OF LIABILITY**" and "**INDEMNIFICATION**" provisions included in the "Terms and Conditions" on Defendant's website as of the date of purchase by Plaintiff and Class Members, and to impose those remedies provided for in the TCCWNA.

## CLASS ACTION ALLEGATIONS

63.    Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

> **All persons in the State of New Jersey who were exposed to the Terms and Conditions on Defendant's website, shop.advanceautoparts.com, during the applicable statute of limitations through the date of final judgment in this action.**

64.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment.

65.    Specifically excluded from the proposed Class is Defendant, its officers, directors, and employees.  Also excluded from the proposed Class is the Court, the Court's immediate family and Court staff.

## FRCP 23(a) Factors

66.    **Numerosity.** Membership in the Class is so numerous that separate joinder of each member is impracticable.  The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records.  Plaintiff reasonably estimates that there are thousands of persons in the Class.

67.    **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action

vigorously.  Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

68.   **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class purchased goods and/or services from Defendant's website, shop.advanceautoparts.com, and/or were displayed, exposed and/or offered the "Terms and Conditions" containing the illegal and predatory exculpatory provisions on that website.

69.   **Existence and Predominance of Common Questions of Law and Fact.**  There are central and substantial questions of law and fact common to all Class Members that control this litigation and predominate over any individual issues.   Included within the common questions are the following:

   a) Whether at all relevant times Defendant included on its website, shop.advanceautoparts.com, a contract entitled "Terms and Conditions" that included provisions entitled "**LIMITATION OF LIABILITY**" and "**INDEMNIFICATION**";

   b) Whether at all relevant times the "**LIMITATION OF LIABILITY**" provisions of Defendant's "Terms and Conditions" contained exculpatory language which disclaims liability for virtually any claim under tort or negligence arising from their purchase of goods or services from the website, and absolved Defendant from any liability for intentional tortious conduct and from any liability for dangerous or substandard products;

   c) Whether at all relevant times the "**INDEMNIFICATION**" provision of Defendant's "Terms and Conditions" required Plaintiff and Class Members to

indemnify and hold harmless Defendant and its personnel for any activity arising out of the use of Defendant's website by Plaintiff and Class Members;

d)  Whether at all relevant times the exculpatory language in the "**LIMITATION OF LIABILITY**" provisions of Defendant's "Terms and Conditions" violated New Jersey statutory and common law;

e)  Whether at all relevant times the "**INDEMNIFICATION**" language in Defendant's "Terms and Conditions" violated New Jersey statutory and common law;

f)  Whether at all relevant times the exculpatory language in the "**LIMITATION OF LIABILITY**" provisions of Defendant's "Terms and Conditions" violated New Jersey's TCCWNA, N.J.S.A. 56:12-14 *et seq.*;

g)  Whether at all relevant times the "**INDEMNIFICATION**" language in Defendant's "Terms and Conditions" violated New Jersey's TCCWNA, N.J.S.A. 56:12-14 *et seq.;*

h)  Whether the Class is entitled to relief pursuant to N.J.S.A. 56:12-17, terminating the "**LIMITATION OF LIABILITY**" and "**INDEMNIFICATION**" provisions contained in Defendant's "Terms and Conditions";

i)  Whether Plaintiff and Class Members are entitled to a civil penalty of not less than $100 for each violation of the TCCWNA pursuant to N.J.S.A. 56:12-17;

j)  Whether Plaintiff and Class Members are entitled, pursuant to N.J.S.A. 56:12-17, to reasonable attorneys' fees and court costs, and in what amount; and

k)  Whether Plaintiff and Class Members are entitled to declaratory and/or other equitable relief.

### FRCP 23(b)(2)

70.    Defendant has acted on grounds generally applicable to the entire Class, thereby warranting final relief pursuant to N.J.S.A. 56:12-17, whereby the above-referenced language in the "**LIMITATION OF LIABILITY**" and "**INDEMNIFICATION**" provisions of the "Terms and Conditions" would be terminated insofar as they continue to violate said provisions of law, which would be appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

71.    Relief under N.J.S.A. 56:12-17, whereby the above-referenced language in the "**LIMITATION OF LIABILITY**" and "**INDEMNIFICATION**" provisions of the "Terms and Conditions" would be terminated, is necessary to prevent further predatory and illegal business practices by Defendant.  Money damages alone will not afford adequate and complete relief, and the relief sought is necessary to restrain Defendant from continuing to commit its predatory and illegal policies.

### FRCP 23(b)(3)

72.    **Common Issues Predominate:** As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiff's TCCWNA claims are based on a common course of conduct. Whether at all relevant times the above-referenced language in Defendant's "**LIMITATION OF LIABILITY**" and "**INDEMNIFICATION**" provisions contained in its "Terms and Conditions" imposed illegal burdens on consumers is an issue common to all members of the Class and is the predominant issue, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove

those elements in individual actions alleging the same claims.

73.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a) Given the size of the claims of individual Class Members, as well as the resources of Defendant, few, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense, and will ensure uniformity of decisions;

c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments, and would create a burden on the court system;

d) Without a class action, Class Members will continue to suffer as a consequence of Defendant's illegal and predatory conduct, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and the Classes are entitled to appropriate civil penalties. This action presents no difficulties that will impede its management by the Court as a class action.

74.     Certification is also warranted under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final relief pursuant to N.J.S.A. 56:12-17 appropriate with respect to the Class as a whole.

## CLAIM FOR RELIEF

Based on the foregoing allegations, Plaintiff's claims for relief include the following:

## COUNT I
### Violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA")
### N.J.S.A. 56:12-14, *et seq.*

75.     Plaintiff hereby incorporates by reference each of the preceding and subsequent paragraphs of this complaint as though fully set forth herein.

76.     The TCCWNA declares "No seller ... shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller … as established by State or Federal Law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed." N.J.S.A. 56:12-15.

77.     Defendant is a "seller" within the meaning of N.J.S.A. 56:12-15.

78.     Plaintiff is a "consumer" as contemplated by N.J.S.A. 56:12-15.

79.     Defendant's "Terms and Conditions" constitute a consumer contract displayed and/or offered by seller to consumers and/or prospective consumers.

80.     At all relevant time, the "Terms and Conditions," as detailed above, included provisions that violated the legal rights of consumers and prospective consumers and/or responsibility of the seller.

81.     First, at all relevant times Defendant included on its website, shop.advanceautoparts.com, language in the "**LIMITATION OF LIABILITY**" provisions of the "Terms and Conditions" that purported to disclaim liability for virtually any claim under tort

or negligence arising from their use of the website and/or purchase of goods or services from the website.

82.     Such exculpatory provisions are disfavored by New Jersey law because "they undermine one purpose of tort law, which is to deter careless behavior by a party in the best position to prevent injuries in the first place." *See, Martinez-Santiago, supra,* 38 F.Supp.3d at 512-13.  Moreover, at all relevant times this provision purported to deprive Plaintiff of his right to a cause of action for any unreasonable risk of harm created by Defendant.  Likewise, the provision purported to absolve Defendant of its legal responsibility to exercise due care and refrain from creating an unreasonable risk of harm to consumers.  Such a provision is contrary to well-established principles of common law and contrary to the TCCWNA.

83.     In addition, at all relevant times these exculpatory provisions purported to absolve Defendant of any responsibility for manufacturing and/or selling a dangerous product and to bar Plaintiff from asserting a claim under the NJPLA for injuries suffered as a result of Defendant's dangerous products.  This provision is contrary to the New Jersey Products Liability Act and defies the Legislatures intent in attempting to address the "urgent need" to protect consumers from dangerous products. *See* N.J.S.A 2A:58C-1.  At all relevant times this provision purported to deprive Plaintiff of his right to a cause of action under the New Jersey Products Liability Act and purports to absolve Defendant of its responsibility to manufacture and sell safe products.  Notwithstanding the chilling effect on the marketplace as a whole were this provision deemed lawful, this provision defies the clear language of the NJPLA and thus violates the TCCWNA.

84.     Further, at all relevant times, under the "Terms and Conditions" Defendant's **"INDEMNIFICATION"** provision required Plaintiff and Class Members to "defend, indemnify, and hold harmless AdvanceAutoParts.com and its affiliates from and against any and

all claims, damages, costs, and expenses, including without limitation, attorneys' fees, arising from or related to your use of the Site or the Products."

85.    Under New Jersey law, it is "clearly established that 'a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms.'" *Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500, 516 (D.N.J. 2014) (quoting *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986)); *Castro v. Sovran Self Storage, Inc.*, 2015 WL 4380775, at *9-*10 (D.N.J. July 16, 2015) (citing *Martinez-Santiago*).   Defendant's language purports to go much further than the provision in *Ramos*, and plainly violates the TCCWNA.

86.    Moreover, at all relevant times the "Terms and Conditions" purported to absolve Defendant of its duty as a business to protect consumers and prospective consumers from the illegal acts of third parties.   Defendant has a duty under the common law, *N.J.S.A.* 56:8-161, *et seq* and various Federal Regulatory Standards to protect customers from the illegal acts of third parties. *See Butler, supra* 89 *N.J.* 284 (business owner has a duty to protect against third-party criminal acts since, "the business invitor is in the best position to provide either warnings or adequate protection for its patrons . . . [and] the public interest lies in providing a reasonably safe place for a patron to shop[.]"); *Wyndham Worldwide Corp.,* 10 *F.Supp.3d* 608-09 (Plaintiff had cause of action against online business since substandard internet security measures were cause in fact of plaintiffs' injuries – despite intervening acts of third-party hackers.); *N.J.S.A.* 56:8-163.

87.    At all relevant times Defendant purported to do away with its responsibility to take reasonable steps to ensure security measures were in place to protect Plaintiffs and their personal information from the criminal acts of third-party hackers.   Likewise, at all relevant times Defendant purported to deny Plaintiffs' their legal right to pursue a cause of action against

Defendant for its failure to take basic reasonable steps required under the common law, *N.J.S.A.* 56:8-161, *et al.* and applicable regulatory schemes.  This provision is unlawful and violates the TCCWNA.

88.    Moreover, the Terms of Use purport to bar Plaintiffs from seeking punitive damages for any and all harm caused by Defendant, **"EVEN IF ADVANCEAUTOPARTS.COM HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES**[.]"  Such a provision is contrary to the NJPDA.  This provision purports to absolve Defendant of its legal obligation to refrain from maliciously and/or wantonly and/or willfully creating an unreasonable risk of harm to consumers.  Likewise, the provision purports to bar Plaintiffs who adequately plead and demonstrate punitive damages to be applicable from pursuing same.  This provision violates the TCCWNA.

89.    Also, the Terms of Use purport to bar Plaintiffs from exercising their legal rights under the U.C.C. and dually purport to absolve Defendant of its legal duty to refrain from causing economic damage and/or property damage to consumers.  By purporting to bar Plaintiffs from seeking damages, whether in tort or in contract, Defendant violates the TCCWNA.

90.    Pursuant to N.J.S.A. 56:12-17, Plaintiff and the Class are entitled to (a) a civil penalty of not less than $100, payable to Plaintiff and each Class Member, for each violation of the TCCWNA; and (b) reasonable attorneys' fees and court costs.

91.    Plaintiff reserves the right to identify additional provisions of the law violated by Defendant as further investigation and discovery warrant.

/ / /

## DEMAND/PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and members of the Class defined herein, prays for judgment and relief as follows:

A.    An Order certifying that this action may be maintained as a class action;

B.    Judgment awarding to Plaintiff and Class Members not less than $100 for each violation of the TCCWNA;

C.    An Order terminating the above-referenced language in the "**LIMITATION OF LIABILITY**" and "**INDEMNIFICATION**" provisions of the "Terms and Conditions" set forth on Defendant's website, shop.advanceautoparts.com, and ordering Defendant to remove said terms from its website;

D.    Plaintiff's reasonable attorneys' fees and court costs; and

E.    Such other and further relief as the Court may deem necessary and appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## JURY DEMAND

Plaintiff and Class Members, pursuant to Fed. R Civ. P. 38(b), hereby demand trial by jury.

Respectfully submitted,
**CLARK LAW FIRM, PC**

By:

**WILLIAM S. PECK, ESQ.**

Gerald H. Clark, Esq. NJ Bar No.048281997
William S. Peck, Esq. NJ Bar No. 020821999
Mark W. Morris, Esq. NJ Bar No. 118292015
811 Sixteenth Avenue
Belmar, New Jersey 07719
Phone: (732) 443-0333
Fax (732) 894-9647
Fax: (504) 524-5763

Scott J. Ferrell, Esq.
Victoria Knowles, Esq.
Newport Trial Group
4100 Newport Place, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469

*Attorneys for Plaintiff*

Dated: May 12, 2016